IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

|  |  |
|---|---|
| **URBAN ECHO ENERGY, LLC** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 8:23-cv-1330 |
| **BANK OF AMERICA, N.A.** | ) |
| Defendant. | ) |

**PLAINTIFF URBAN ECHO ENERGY, LLC'S
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER,
ALTERNATIVELY, MOTION FOR REPLEVIN, AND REQUEST FOR HEARING**

COMES NOW plaintiff, Urban Echo Energy, LLC ("Urban Echo" or "Plaintiff"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 65, and hereby files this Emergency Motion for Temporary Restraining Order, Alternatively, Motion for Replevin, and Request for Hearing ("Motion for TRO") and moves the Court for entry of an immediate temporary restraining order ("TRO"): (i) requiring Bank of America, N.A. ("BOA" or "Defendant") to credit Plaintiff's account at BOA in the amount of $5,100,000,000.00 in order for Plaintiff's offer to purchase the Washington Commanders for $7,100,000,000.00 to be properly evaluated, or alternatively, (ii) directing BOA to immediately return certain bank drafts, unstamped, to Plaintiff. In support thereof, Plaintiff states as follows:

I.   **STATEMENT OF FACTS**

Put simply, this is a case where BOA has refused to honor its statutory duties and either provide credit for or return bonded bank drafts in the amount of $5,100,000,000.00.

Plaintiff filed a Complaint on May 19, 2023, setting out the facts related to BOA's mishandling of certain bank drafts made payable to BOA and dated March 8, 2023, in the amount of $5,100,000,000.00 (the "Bank Drafts").[1] *See* Complaint; *see also* Verified Statement of Brian Davis attached hereto at 10.  Essentially, Plaintiff is an interested purchaser of the Washington Commanders, a long-established National Football League franchise (the "Commanders"). *Id.* at 8.  In order to eliminate any questions regarding Urban Echo's financial condition for any offer that was to be made, on March 9, 2023, it deposited the Bank Drafts with BOA. *Id.* at 9-11.  The Bank drafts were bonded and couriered as required by BOA's procedures, and BOA accepted the Bank Drafts. *Id.* at 11.  However, Plaintiff was notified on March 15, 2023, that BOA was terminating its accounts[2] and refusing to credit Plaintiff's account. *Id.* at 12.  Since that date, despite multiple demands, BOA has refused to either credit Plaintiff's account in the amount of the Bank Drafts or return the Bank Drafts to the Plaintiff. *Id.* at 15.

On or about March 21, 2023, Plaintiff made an offer to purchase the Commanders (the "UE Offer"). *Id.* at 15.  The UE Offer was to be supported by the Bank Drafts and was approximately $1,000,000,000.00 higher than any competing offer. *Id.* at 15. 16.  Representatives of BOA acknowledged that the UE Offer was the highest and best offer for the purchase of the Commanders. *Id.* at 16.  On May 15, 2023, Plaintiff became aware that Mr. Snyder had accepted a bid for the purchase of the Commanders that was significantly less than the UE Offer. *Id.* at 17.  Plaintiff subsequently learned that BOA never informed the Snyders of the existence of the Bank Drafts and the tender of $5,100,000,000.00. *Id.* at 18.  Plaintiff believes that the Snyders would have accepted Urban Echo's offer to purchase the Commanders had they been aware of the $5,100,000,000.00 that was being held in limbo by BOA. *Id.* at 19.

---

[1] Urban Echo Capitol Heights, LLC ("UECH") is a wholly owned subsidiary of Urban Echo.
[2] It appears to Plaintiff that its account at BOA remains open, albeit with a $0.00 balance.

BOA remains unlawfully in possession and control of the Bank Drafts, and BOA's improper actions have caused and continue to cause significant financial and reputational damage to Urban Echo. *Id.* at 21-22. In order to avoid irreparable harm to Plaintiff, both financially and reputationally, BOA must be enjoined and directed to return what is undisputedly Plaintiff's property.

## II.     LEGAL STANDARD

### A.  Temporary Restraining Order

The standard for obtaining a TRO is the same as for obtaining a preliminary injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1, 283 (4th Cir. 2006). Under this standard, the movant is required to establish the following factors: (i) the movant is likely to succeed on the merits; (ii) the movant is likely to suffer irreparable harm in the absence of preliminary relief; (iii) the balance of equities weighs in the movant's favor; and (iv) the injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342, 346 (4th Cir. 2009); *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013).

### B.  Replevin

"[U]nder Maryland law, replevin allows '[a] person claiming the right to immediate possession of personal property [to] file an action for possession before judgment." Griaznov v. J-K Techs., LLC., Civil Action No. ELH-16-2522, 2017 U.S. Dist. LEXIS 32780, at *27-28 (D. Md. Mar. 8, 2017) (citing *IFAST, Ltd. v. All. for Telecommunications Indus. Sols., Inc.*, CCB-06-2088, 2007 U.S. Dist. LEXIS 80080, 2007 WL 3224582, at *10 (D. Md. Sept. 27, 2007); 1 M.L.E. Actions § 30 (2006); *Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486, 96 A.3d 221, 237 (2014) ("In a replevin action, a party seeks basically to recover specific goods and chattels to which

he or she asserts an entitlement to possession."); *Furda v. State*, 193 Md. App. 371, 398, 997 A.2d 856; 193 Md. App. 371, 997 A.2d 856, 872 n.17 (2010) ("Replevin is appropriate 'in all cases where the object of the suit is to recover possession of specific goods and chattels, to the possession of which the plaintiff claims to be entitled at the time of instituting the suit.'") (citation omitted).

"'[W]hoever is entitled to possession, whatever may be his title in other respects, may maintain or defeat the action of replevin; his right to success in the action of replevin depends entirely on his right to possession.'" *Dehn Motor Sales*, 439 Md. at 486; 96 A3d at 237 (quoting *Shorter v. Dail*, 122 Md. 101, 89 A. 329, 330 (1913)).

### III.     ARGUMENT - TRO

#### A. Plaintiff is Likely to Succeed on The Merits

The first step in seeking a TRO is to establish that the movant is likely to succeed on the merits. *See Pashby* at 321. "Although this inquiry requires plaintiffs seeking injunctions to make a 'clear showing' that they are likely to succeed at trial, plaintiffs need not show a certainty of success." *Id.*

As established by the Complaint and the Statement of Facts in this Motion for TRO, and supported by Verified Statement, Plaintiff caused the Bank Drafts to be issued by Citibank and deposited with BOA. Upon receipt of the Bank Drafts, BOA was **_required_** under Md. Code, Com. Law § 4-202 to take proper action before its midnight deadline. Proper action would be either presenting the Bank Drafts to the issuing bank for payment or returning the Bank Drafts to the Plaintiff. Md. Code, Com. Law § 4-202.

It is undisputed that the Bank Drafts were and are the property of Plaintiff. Accordingly, it is entitled to credit in the amount of $5,100,000,000.00. Based on the foregoing, Plaintiff is likely to succeed on the merits and this Motion for TRO should be granted.

### B. Plaintiff Will Suffer Irreparable Harm in the Absence of a TRO

Plaintiff will suffer irreparable harm in the absence of a TRO. To grant a preliminary injunction, the Court requires the movant to demonstrate that irreparable injury is likely in the absence of an injunction. *See Winter* at 22; *see also Pashby* at 328. BOA's actions have already caused Plaintiff to suffer damages as another party has entered into a contract to purchase the Commanders. If Plaintiff does not receive credit for the Bank Drafts (or their return) immediately, it will suffer irreparable harm due to the inability to access these funds in order to make a further competing offer for the Commanders.

BOA's actions in illegally detaining Plaintiff's property have not only led to the Snyders not accepting the UE Offer but have also led to devastating reputational damage to Plaintiff. Without an immediate TRO, Plaintiff will continue to suffer irreparable harm both financially and reputationally, and it will continue to lose the daily benefit of $5,100,000,000.00.

### C. The Equities Weigh in Favor of Plaintiff

Under *Winter*, granting a TRO is an extraordinary remedy never awarded as of right. *See Winter* at 24. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id.* at 24 quoting *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987); *see also Pashby* at 329. In this case, a TRO is wholly appropriate because all that is being sought is the return of Plaintiff's rightful property. Conversely, BOA will not be harmed one whit by being directed to credit Plaintiff's account or to return the Bank Drafts which are undisputedly Plaintiff's property.

BOA failed to use ordinary car in complying with its statutory duties and has caused great harm to the Plaintiff. The equities clearly weigh in favor of Plaintiff.

### D. The TRO is in the Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter* at 24 quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "[L]ikelihood of success on the merits satisfie[s] the public interest prong only if other considerations did not meaningfully weigh on that factor." *Pashby* at 330. For the reasons stated herein, this is a case where the public interest is best served by issuance of an injunction.

Not only should banks like BOA be deterred from illegally converting customers' property, but they should be motivated to exercise proper due diligence when accepting deposits from customers. Especially in the current climate of banking uncertainty, BOA's actions further erode Americans' trust in the financial system. Ordering return of Plaintiff's property is unquestionably in the public interest.

### IV. ALTERNATIVE ARGUMENT - REPLEVIN

Alternatively, if BOA is not directed to give Plaintiff credit for the Bank Drafts, Plaintiff is entitled to immediate return and possession of the items under well-established Maryland law. *See supra*. Under Maryland law, the Bank Drafts are the Plaintiff's property, and BOA is required to either give Plaintiff credit for them or return them to Plaintiff under the Maryland Commercial Code.

Md. Code, Com. Law § 3-202(b) (Negotiation subject to rescission) provides:

> (b) To the extent permitted by other law, negotiation may be rescinded or may be subject to other remedies, but those remedies may not be asserted against a subsequent holder in due course or a person paying the instrument in good faith and without knowledge of facts that are a basis for rescission or other remedy.

*Id.* In this case, unless BOA negotiated the Bank Drafts without giving credit to Plaintiff (which would be grand larceny or embezzlement), Plaintiff is entitled to rescind the Bank Drafts and have them returned.

> Official Comment 2 to Md. Code, Com. Law § 3-202 provides:
>
>> The remedy of a person with a claim to an instrument is to **recover the instrument by replevin** or otherwise; to impound it or to enjoin its enforcement, collection, or negotiation; to **recover its proceeds from the holder**; or to intervene in any action brought by the holder against the obligor.

*Id.* (emphasis supplied). Thus, this Court must order BOA to (i) return the Bank Drafts if they have not been negotiated, or (iii) provide Plaintiff with $5,100,000,000.00 if they have.

## V. CONCLUSION

For the foregoing reasons, the factors utilized to determine whether a TRO should be granted all weigh in favor of Plaintiff. Plaintiff is likely to succeed on the merits and has suffered irreparable harm, the equities weigh in Plaintiff's favor and it is in the public interest to grant the TRO.

**WHEREFORE**, Plaintiff requests that the Court grant Plaintiff's TRO and enter an immediate temporary restraining order ("TRO"): (i) requiring Bank of America, N.A. ("BOA" or "Defendant") to credit Plaintiff's account at BOA in the amount of $5,100,000,000.00 in order for Plaintiff's offer to purchase the Washington Commanders for $7,100,000,000.00 to be properly evaluated, or alternatively, (ii) directing BOA to immediately return certain bank drafts, unstamped, to Plaintiff.

Dated:  May 22, 2023                                Respectfully submitted,

                **MARTIN LAW GROUP, P.C.**

                /s/ Jeffery T. Martin_____
                Jeffery T. Martin, Jr., Bar No. 18328
                Martin Law Group, P.C.
                7918 Jones Branch Dr., 4th Floor
                McLean, VA, 22102 – 3337
                703-223-1822
                jeff@martinlawgroupva.com
                Counsel for the Plaintiff

## **CERTIFICATE OF SERVICE**

 I hereby certify that a true copy of the foregoing TRO was sent by courier on this 22nd day of May 2023 to:

BANK OF AMERICA, N.A.
SERVE REGISTERED AGENT:
THE CORPORATION TRUST, INC.
2405 York Rd., Suite 201
Lutherville Timonium, MD 21093-2264

                /s/ Jeffery T. Martin_____
                Jeffery T. Martin